IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BERNITA L. FRITZ                    Case No. 3:14-cv-00888-MA

                Plaintiff,                    OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

             Defendant.

MERRILL SCHNEIDER
Schneider, Kerr & Gibney
P.O. Box 14490
Portland, OR 97293

     Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

MARTHA A. BODEN
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Bernita Fritz seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). For the reasons that follow, this court reverses the decision of the Commissioner and remands this matter pursuant to sentence four of 42 U.S.C. §405(g) for further administrative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB and SSI on December 21, 2010, alleging disability beginning November 6, 2009, due to bipolar disorder. Plaintiff meets the insured status requirements for a DIB application through December 31, 2014.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on November 28, 2012, at which plaintiff appeared with her attorney and testified. A vocational expert, Thomas P. Weiford, also appeared at the second hearing and testified. On January 24, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision

became the final decision of the Commissioner for purposes of review.

Born in 1963, plaintiff was 50 years old on the date of the ALJ's unfavorable decision. Plaintiff has a ninth grade education and obtained her General Education Degree (GED). Plaintiff has past relevant work as a certified nursing assistant (CNA) and gas station attendant.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since November 6, 2009. At step two, the ALJ found that plaintiff had the following severe impairments: affective/bipolar disorder and breathing difficulty. At step three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations. Plaintiff can lift and carry 20 pounds occasionally and ten pounds frequently, can stand and walk in two-hour intervals for a total of eight hours per day, and has no restrictions in sitting. Plaintiff is also able to remember, understand, and carry out instructions and tasks that are generally required by occupations with a skill vocational preparation (SVP) of 1 to 3.

At step four, the ALJ found that plaintiff is able to perform her past work as a gas station attendant. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from November 6, 2009, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ erred in evaluating the medical opinion of nonexamining physician, Sandra Lundblad, Psy.D; (2) the ALJ failed to properly evaluate plaintiff's RFC; (3) the ALJ erred in evaluating lay testimony; and (4) based on these errors, the ALJ erred in finding plaintiff can perform her past work at Step Four.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the

4 - OPINION AND ORDER

findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.    The ALJ Erred in Evaluating Dr. Lundblad's Opinion

"The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995). A nonexamining physician is one who neither examines no treats the claimant. *Id.* at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the

opinion of either an examining physician or a treating physician."
*Id.* at 831. A nonexamining physician's opinion can constitute
substantial evidence if it is supported by other evidence in the
record. *Morgan v. Commissioner of Soc. Sec. Admin.,* 169 F.3d 595,
600-01 (9th Cir. 1999). Moreover, the "report of a nonexamining,
nontreating physician need not be discounted when it 'is not
contradicted by all other evidence in the record.'" *Andrews v.
Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995).

An ALJ may reject the testimony of an examining physician, in
favor of a nonexamining physician by providing specific and
legitimate reasons supported by substantial evidence in the record.
*Tonapetyan v. Halter*, 242 F.3d 1144, 1148(9th Cir. 2001). When
evaluating conflicting opinions, an ALJ is not required to accept
an opinion that is not supported by clinical findings, or is brief
or conclusory. *Id.* at 1149.

Plaintiff argues that the ALJ erred in evaluating the opinion
of nonexamining physician, Sandra Lundblad, Psy.D. Plaintiff
contends that the ALJ failed to provide specific and legitimate
reasons for rejecting Dr. Lundblad's opinion. I agree.

In a June 1, 2011 Psychiatric Review Technique (PRT)
assessment, Dr. Lundblad assessed plaintiff with a mild restriction
in activities of daily living and moderate difficulties in
maintaining social functioning and concentration, persistence, and
pace. Tr. 104-105. In a June 1, 2011 Mental RFC assessment, Dr.

Lundblad opined that plaintiff is capable of understanding, remembering, and carrying out short, simple routine tasks and instructions. Tr. 106-107. Dr. Lundblad also opined that plaintiff should avoid frequent public contact and frequent one-on-one contact with coworkers due to her mental health symptoms. Tr. 107. Dr. Lundblad's opinion is uncontradicted in the medical record.

In the decision, the ALJ gave Dr. Lundblad's opinion "little weight" because: (1) the opinion is inconsistent with plaintiff's work activity as a gas station attendant; and (2) the medical evidence does not show that plaintiff's symptoms have deteriorated since her previous work activity. The ALJ cited specifically to plaintiff's hearing testimony and stated that plaintiff testified that she was fired from her gas station attendant job at Gateway because of an equipment malfunction, not due to her mental impairments. Having carefully reviewed the record, I conclude that the ALJ's reasoning falls short.[1]

Contrary to the ALJ's finding, Dr. Lundblad's opinion is not inconsistent with plaintiff's ability to perform past work as a gas station attendant. "If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity . . . Examples of the special conditions that may relate to your impairment include . . . (1) you

---

[1] The Ninth Circuit has not ruled on whether the clear and convincing standard applies to an ALJ's rejection of an uncontradicted nonexamining physician's opinion.

required special assistance from other employees in performing your work . . . (6) you were given the opportunity to work despite your impairment because of family relationship." 20 C.F.R. §§ 404.1573(c), 416.973(c).

In this case, plaintiff worked for Gateway gas station from August 2008 until November 2009, but plaintiff indicated that her family operated the Gateway. Tr. 61, 224. In fact, her family tried to train plaintiff to run a cash register but she was unable to learn this job duty; her family modified plaintiff's duties to simply allow her to pump gas. Tr. 53-54. Plaintiff testified that if she received cash from a customer, she would take the money to the cashier, who would give her the correct change. *Id.* While plaintiff was able to work at Gateway for at least a year, the evidence demonstrates that she performed this work under "special conditions;" plaintiff cannot independently perform this type of work.

The ALJ focused on a statement out of context from plaintiff's hearing testimony to support his conclusion that plaintiff could sufficiently perform her past work as a gas station attendant. At the hearing, plaintiff testified that stress played a factor in being fired from her three jobs as a gas station attendant. Tr. 37, 224. With respect to the Gateway job, plaintiff testified that "I was kind of busy. There was like four or five cars there, and I heard a bunch of honking . . . I turned around, and there was like

30 gallons of gas on the ground." Tr. 37. Although the ALJ focused on the gas spill immediately preceding her firing, plaintiff further testified that her employer told her she "wasn't cut out for" the job. Tr. 60.

Moreover, the record shows plaintiff had difficulty with her other two gas station attendant jobs, which were performed without accommodations. For example, at the Jackson Foods gas station in 2008, plaintiff testified that she was fired for missing too many days from work due to her mental symptoms. Tr. 39, 224. In 2010, plaintiff worked for one month as a gas station attendant at the 76 station before being fired for being too slow on the job. Tr. 52, 224. Plaintiff further testified to the "stress of keeping up with all the cars . . . I would get to the point where I couldn't think, and I couldn't run the [cash register]." Tr. 48. Thus, I conclude that the ALJ's determination that Dr. Lundblad's opinion is inconsistent with plaintiff's prior work as a gas station attendant is not supported by substantial evidence, and therefore, does not provide a specific and legitimate basis to reject her opinion. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

Next, the ALJ discredited Dr. Lundblad's opinion on the basis that the medical record did not demonstrate a deterioration in plaintiff's mental functioning since being fired from her job at Gateway. I wholly disagree. For example, in January 2008, plaintiff was hospitalized for three days after attempting to commit suicide

by overdosing on Lithium and Zyprexa. Tr. 280. Upon admission, plaintiff was assessed with a Global Assessment Function (GAF) score of 30.[2] In August 2009, plaintiff's treatment provider prescribed an increase in her Lithium dosage from 600 mg to 900 mg to reduce active bipolar symptoms. Tr. 307. In January 2010, plaintiff was hospitalized for a day due to mental health symptoms, including anxiety and paranoia. Tr. 365.

Contrary to the ALJ's assertion, occasional treatment notes documenting improvement and stability do not entirely negate plaintiff's functional limitations from her bipolar disorder. "The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Garrison v. Colvin*, 759 F.3d 995, n.23 (9th Cir. 2014)("the ALJ was not permitted to 'cherry-pick' from [treatment notes] to support a denial of benefits"). For example, primary care physician, Stephanie Cha, M.D., noted that although plaintiff reported her mood as stable in July 2009, Dr. Cha indicated that plaintiff endorsed symptoms of paranoia and presented with a flat affect. Tr. 384-85. In September

---

[2] A GAF of 21-30 indicates behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or an inability to function in almost all areas (such as staying in bed all day). *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) pp. 31-34 (4th ed. 2000).

2009, plaintiff reported problems with sleeping, symptoms of paranoia, and passive suicidal ideation. Tr. 387. Dr. Cha noted a flat affect and linear thought process. Tr. 388. Dr. Cha's treatment notes are consistent with Dr. Lundblad's opinion that plaintiff is limited to simple routine tasks.

Moreover, a February 1, 2011 consultative examination by Jane Starbird, Ph.D., further supports Dr. Lundblad's opinion. Dr. Starbird noted a blunted affect with inappropriate speech and variable concentration. Dr. Starbird also noted that plaintiff was able to repeat digits, unable to perform serial seven calculations, and presented with moderate to poor social skills. Tr. 406. Dr. Starbird noted that plaintiff reported being fired from her three gas station jobs because she became paranoid and confused, which is consistent with her hearing testimony.[3] Tr. 405. Dr. Starbird diagnosed bipolar disorder I and alcohol dependence and opined that plaintiff's presentation, self-report, and medical record are all consistent. Tr. 407. The ALJ gave Dr. Starbird's examination findings "some weight" because "her finding that claimant has difficulties with memory and concentration is consistent with her examination results." Tr. 24. Dr. Lundblad's opinion is consistent with Dr. Starbird's comprehensive examination. The ALJ's decision

---

[3] Plaintiff does not challenge the ALJ's negative credibility assessment. Nevertheless, I reviewed the ALJ's rationale and find that he failed to provide clear and convincing reasons, supported by substantial evidence, to discredit plaintiff's testimony.

to give "some weight" to Dr. Starbird's examination findings is inconsistent with his decision to give "little weight" to Dr. Lundblad's opinion, which relies primarily on Dr. Starbird's findings. Accordingly, the ALJ improperly discredited Dr. Lundblad's opinion on the basis that the medical record did not show a worsening of symptoms.

In short, the ALJ failed to cite specific and legitimate reasons, supported by substantial evidence to discount the opinion of Dr. Lundblad; therefore, the ALJ has erred.

## II.  The ALJ Erred in Assessing Plaintiff's RFC

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see Bayliss* v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)(the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

In determining the RFC, the ALJ must consider limitations imposed by all of the claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184.  The RFC assessment is "a function-by-function

assessment based on all of the relevant evidence of an individual's ability to do work-related activities." *Id.*

Plaintiff argues that the ALJ failed to provide an RFC that is a function-by-function assessment of plaintiff's mental limitations. Plaintiff also argues that the ALJ erred in failing to incorporate his finding of a moderate limitation in maintaining concentration, persistence, and pace into the RFC finding. Plaintiff is correct.

"The [Dictionary of Occupational Titles (DOT)] lists a SVP time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, *available at* 2000 WL 1898704 at *3.

In finding that plaintiff can remember, understand, and carry out instructions and tasks generally required by occupations with an SVP of one to three, the ALJ failed to provide an assessment of plaintiff's functional limitations resulting from her bipolar disorder. SVP levels are generally discussed in relation to vocational assessment of the disability process at steps four and five and refers to the time it takes to learn a particular job. The ALJ failed to express plaintiff's mental RFC in terms of her ability to perform work-related activities.

13 - OPINION AND ORDER

As plaintiff argues, the ALJ also failed to incorporate his finding of a moderate limitation in maintaining concentration, persistence, and pace into the RFC finding. In assessing whether plaintiff's impairment meets or equals a listing at Step Three, the ALJ found that plaintiff's bipolar disorder results in a moderate limitation in maintaining concentration, persistence, and pace (CPP). Tr. 20. The ALJ's RFC restriction to semi-skilled[4] work does not adequately reflect a moderate limitation in CPP because such a limitation generally corresponds to an RFC restriction to simple repetitive tasks or unskilled work as indicated by the medical record. *See Stubbs-Danielson,* 539 F.3d at 1173 (holding ALJ properly translated a moderate limitation in concentration, persistence, or pace into a RFC limitation to simple tasks); *Sabin v. Astrue*, 337 Fed. Appx. 617, 621 (9th Cir. 2009) ("the end result of [plaintiff's] moderate difficulties as to [CPP] was that she could do simple and repetitive tasks on a consistent basis").

Here, the record does not support a limitation to semi-skilled work. All of the medical opinions and evidence indicate that plaintiff is more limited than the ALJ's finding. As discussed above, Dr. Lundblad's opinion that plaintiff is limited to short, simple routine tasks is supported by substantial evidence in the record, and the ALJ failed to provide specific and legitimate

_____

[4] Here, the ALJ's finding that plaintiff is capable of performing SVP three level jobs is essentially a limitation to semi-skilled work. *See* SSR 00-4p.

reasons for rejecting her opinion. Dr. Starbird's consultative examination findings also support Dr. Lundblad's assessment of plaintiff's mental limitations. Dr. Lundblad's opinion is also consistent with the February 17, 2011 mental RFC assessment of nonexamining physician Megan Nicoloff, Psy.D. Tr. 82-84. To be sure, Dr. Lundblad's opinion is uncontradicted, and there is no medical opinion in the record opining that plaintiff is capable of performing semi-skilled work.

Furthermore, it appears that the only support for the ALJ's RFC is plaintiff's alleged ability to work as a gas station attendant at Gateway.[5] Tr. 24. However, as discussed previously, plaintiff's ability to perform this past job is not consistent with an ability to perform semi-skilled jobs because the job was performed under special conditions.

In sum, because the ALJ's RFC finding is not supported by substantial evidence in the record, I conclude that the ALJ erred in evaluating plaintiff's RFC.

### III. Lay Witness Testimony

Lay witness testimony as to how a claimant's symptoms affect his ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100

---

[5] The VE testified that plaintiff's past work as a gas station attendant has an SVP of three. Tr. 75.

F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

In a January 22, 2011 Third Party Function Report, David Yegge, plaintiff's former manager at the 76 gas station, noted that plaintiff was unable to use the cash register for simple gas sales and always required assistance. Tr. 240. Mr. Yegge noted that plaintiff had difficulty keeping up with customer volume at the gas station. *Id.* Mr. Yegge testified that he has known plaintiff for ten years and noted that plaintiff has not been able to keep a job during that time. Tr. 241. Mr. Yegge also noted that he is not convinced that plaintiff takes her medication on a regular basis. Tr. 242. Mr. Yegge further noted that plaintiff has difficulty socializing with other people and had difficulty getting along with coworkers. Tr. 245.

In the instant action, plaintiff argues that the ALJ erred in evaluating the lay testimony of Mr. Yegge. I agree.

In the decision, the ALJ gave Mr. Yegge's testimony "little weight" because his statements that plaintiff was unable to "keep up at work is contrary to her ongoing work activity, which ended only due to problems with the equipment." Tr. 24. The ALJ also erroneously identified Mr. Yegge as plaintiff's boyfriend rather than work manager. *Id.* The Commissioner concedes that the ALJ erred in misidentifying Mr. Yegge but argues that it is harmless and that

the ALJ provided a germane reason for rejecting Mr. Yegge's testimony. I disagree.

Contrary to the ALJ's finding, Mr. Yegge's testimony is not inconsistent with plaintiff's work at the 76 gas station. Plaintiff worked at this gas station for only a month before being fired. Tr. 52, 224. At the hearing, plaintiff testified that she kept making mistakes with the cash register and had difficulty handling the stress associated with serving the high volume of cars at the gas station. Tr. 48. Plaintiff also testified that she would require assistance from her manager, Mr. Yegge to fix her mistakes and help her keep up with the stream of customers. Consistent with Mr. Yegge's testimony, plaintiff testified that she was fired from her job at the 76 station because she was too slow. Tr. 52. In fact, as discussed above, plaintiff testified to significant problems maintaining her past three gas station jobs, including handling high volume of customers and an inability to work a cash register. Thus, Mr. Yegge's testimony is supported by plaintiff's testimony that she had difficulty performing her job as a gas station attendant.

Accordingly, I conclude that the ALJ has not provided a germane reason for discrediting Mr. Yegge's testimony. *See Stout*, 454 F.3d at 1053 (ALJ's failure to address and provide a germane reason for rejecting lay testimony is not harmless).

## IV.  **Step Four**

At step four, the claimant has the burden to show she can no longer perform her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). However, the ALJ must still provide factual findings to support his step four conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* at 845. At steps four and five, the ALJ can rely on VE testimony in determining whether a claimant can perform his past relevant work or other work in the national economy. *See Johnson v. Shalala,* 60 F.3d 1428, 1436 (9th Cir. 1995) (holding that the ALJ properly relied on expert testimony to find claimant could perform two jobs identified by the VE).

Plaintiff also briefly argued that because the ALJ erred in assessing plaintiff's RFC, the ALJ's Step Four finding is not supported by substantial evidence. Plaintiff specifically contends that she cannot perform her past relevant work because it is semi-skilled. I agree.

At the hearing, the ALJ asked the VE to identify plaintiff's past relevant work. The VE testified that the most analogous job in the DOT to plaintiff's work as a gas station attendant is at the medium level with an SVP of 3. *Dictionary of Occupational Titles*,

§ 915.467-010. Tr. 75. The VE noted that plaintiff did not perform

the auto repair duties of the job as it is listed in the DOT:

> the Department of Labor categorizes the work as a fuel
> attendant as medium, but then indicates that . . . [is
> for] individuals that do lubrication and do many other
> activities. So there's not one DOT that is consistent
> with that, light - - it's my opinion that the work would
> be categorized in the light category.

Tr. 75

Although the DOT indicates that plaintiff's past work is generally

performed at the medium level, the VE testified that plaintiff's

past relevant work is performed at the light level. *Id.* The ALJ did

not pose a hypothetical to the VE incorporating all of the

limitations of the RFC finding to determine whether plaintiff could

perform her past relevant work. The ALJ also failed to inquire as

to whether the VE's testimony was consistent with the DOT.[6]

In the decision, the ALJ found that plaintiff could perform

her past relevant work as a gas station attendant. Specifically,

the ALJ noted that "in comparing the claimant's residual functional

capacity with the physical and mental demands of this work, I find

that the claimant is able to perform it as actually performed . .

---

[6] After review of the hearing testimony, it appears that the
VE's testimony conflicts with the DOT, but the VE did not testify
as to this conflict. The VE also did not provide a sufficient
explanation for the deviation from the DOT. *See Massachi v.
Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007)(holding that
because the ALJ failed to ask the VE about possible conflicts
with the DOT, court cannot determine if ALJ properly relied on
VE's testimony).

. I note that she performed this job after her alleged onset date, and her work did not end due to her impairments." Tr. 24.

The ALJ's finding that plaintiff can perform her past work as a gas station attendant is not supported. As discussed above, the ALJ erred in finding that plaintiff is capable of performing semi-skilled work, ignoring two medical opinions that found her more limited in terms of mental functioning. The VE classified plaintiff's past work as a gas station attendant with a SVP level of three or semi-skilled work. Tr. 75. Accordingly, because the ALJ erred in evaluating plaintiff's RFC, the ALJ's Step Four finding is not supported by substantial evidence.

## IV.  **Credit-as-True**

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. *Vasquez*, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart*, 340 F.3d 873, 876 (9th Cir. 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Commissioner of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

On this record, I conclude that outstanding issues must be resolved before a final determination of disability can be made. The ALJ erred in evaluating Dr. Lundblad's opinion and assessing plaintiff's RFC. As previously discussed, the record does not support a limitation to semi-skilled work. Even if Dr. Lundblad's opinion was credited as true, this opinion does not support an overall finding of disability. Dr. Lundblad opined that plaintiff could understand and perform short simple routine tasks and instructions. With a limitation to unskilled work, there is a possibility that plaintiff could still perform other work at step

five. Because the ALJ found plaintiff not disabled at step four, the ALJ did not reach the step five question of whether plaintiff is capable of performing other work that exists in significant numbers in the national economy.

Additionally, the ALJ also erred in evaluating lay testimony and in assessing plaintiff's credibility. These unresolved issues are best addressed by the ALJ. Thus, I decline to award immediate award of benefits because the record as a whole creates serious doubt as to whether plaintiff is, in fact, disabled. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Based on the foregoing, I exercise discretion under *Connett* and conclude a remand for further proceedings is required to permit the ALJ to further evaluate Dr. Lundblad's opinion; further assess plaintiff's RFC; reevaluate plaintiff's credibility; and evaluate whether plaintiff is capable of performing other work that exists in significant numbers in the national economy, with assistance of a vocational expert if necessary.

**CONCLUSION**

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this *13* day of May, 2015.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge

23 - OPINION AND ORDER